1809]

Dorsey
vs
Gassaway

*Martin*, for the Defendant in error, on the *first* bill of exceptions, referred, as to the *first point*, to *Sim & Lee's Lessee vs. Deakins*, 2 *Harr. & M'Hen.* 46. ' *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 18.   The acts of July 1779, *ch.* 8, and July 1721, *ch.* 14.

On the *second point*, he referred to *Carroll et al. Lessee vs. Norwood*, 4 *Harr. & M'Hen.* 287; and *Ex parte Bollman & Swartwout*, 4 *Cranch*, 75.

On the *second* bill of exceptions, he cited *Walrond vs. Van Moses*, 8 *Mod.* 322, 323.

THE COURT were of opinion, that there was no error in the opinions expressed by the general court in the several bills of exceptions.

JUDGMENT AFFIRMED.

---

JUNE.

DORSEY VS. GASSAWAY.

APPEAL from the General Court:   The present was an action of *replevin*, brought by the appellee for two negro

The admissions by counsel of certain facts in a special verdict taken at a former trial between the same parties in the same action, are not evidence at a new trial of the same cause

If slaves remain in the possession of the vendor, the bill of sale must be recorded; and whether they remained in his possession, is a matter of fact for the jury; if they find they were not in his possession, the bill of sale is not required to be recorded; and it is not evidence, although it was recorded, unless the execution of it is proved.

To lay the foundation for proving an original deed lost, the evidence must be given to the court. *(note)*

Proof being made of the loss of an original deed of mortgage of land and slaves, dated in 1763, the *inspeximus* was admitted to be read as legal evidence, although the deed was not recorded in the manner prescribed by law, so far as respected the slaves in dispute

Where a deed is lost, or not in the power of the party to produce it, it is only necessary to show an examined copy, or prove the contents of the deed

Certain facts refused to be admitted in evidence to prove, that a person who purchased certain slaves, and had made a voluntary gift of them, never paid any consideration for the slaves

Certain acts and declarations of the defendant, subsequent to his sale of the slaves for which an action of replevin was brought, and before his insolvency, are not evidence to defeat the claim of the plaintiff

An affidavit made by a debtor, and payment into the treasury under the tender law, admitted in evidence to prove the person was indebted, and made the payment into the treasury

Proceedings in chancery under an insolvent law, are not evidence in favour of the person who had obtained the benefit of that law, to prove an acknowledgment and admission by him on his application for the benefit of that law

A bill in chancery, with all the proceedings and decree thereon, cannot be read in evidence in an action between different parties from those named in the proceedings

An answer in chancery, made by the respondents from information derived from the present defendant, is not admissible in evidence.  But the declarations of the defendant are admissible evidence; and a witness may recur to the answer to refresh his memory as to the declarations made to him - by the defendant

No person will be permitted to disaffirm his own sale. He cannot set up his discharge under an insolvent law, to disaffirm his prior acts

If a mortgage of slaves was subsisting, and the mortgagor claiming the absolute ownership of them, sold them for a full consideration, although as to the mortgagee, the sale would transfer only the equitable interest, yet as between the vendor and vendee, the operation of the contract would be to pass the absolute ownership in the slaves to the vendee, and notwithstanding the after discharge of the vendor, under an insolvent law, and his purchase of the slaves from the mortgagee, his subsequent acts, in perfecting his title to the slaves, will enure in law to confirm, and not to defeat, his contract with the vendee

If a debt is due on mortgage and on open account, and partial payments are made by the debtor, without any application, the law will apply the payments to the mortgage debt

Declarations made by the defendant before and after his discharge under an insolvent law, may be given in evidence against him

Payments made by a mortgagor are not to be applied to discharge a debt due on the mortgage, in favour of a purchaser of part of the property mortgaged, who had not paid for it, and who had made a gift thereof to his son, to defraud his creditors

In an action of replevin, the jury may give such damages as they think the plaintiff is justly entitled to, as an equivalent for the injury sustained

slaves, *James* and *Harry.* The defendant, (the present appellant,) pleaded *non cepit* and *property.* General replication and issues joined. There had been a trial in this case in the general court at October term 1799, and judgment having been rendered for the defendant, the plaintiff appealed to the court of appeals, where the judgment was *reversed*, and a *procedendo* awarded for a new trial. See 4 *Harr. & M'Hen.* 405.

1. The defendant at the new trial at October term 1805, offered in evidence to the court, the admissions made by the plaintiff's counsel in the *special verdict* taken, at the former trial at October term 1799, to prove the existence of the mortgage therein stated.

*Mason*, for the Plaintiff, objected to this being done, and cited *Mahoney vs. Ashton,* 4 *Harr. & M'Hen.* 295, 322.

CHASE, Ch. J. Facts are often admitted and stated for the purpose only of bringing a particular point of law before the court. As the finding of the jury, in the special verdict, was on the admissions of counsel, it is not evidence to prove the existence of the mortgage.

2. The defendant offered in evidence a bill of sale, for the negroes mentioned in the declaration, from *Clerke*, administrator of *Russell*, to *Edward Dorsey,* one of the original defendants in this action.

*Mason*, for the Plaintiff, objected to the bill of sale's being read, unless its execution was proved.

CHASE. Ch. J. If the negroes remained in the possession of the vendor, the bill of sale is required to be recorded; and whether the negroes remained in the possession of the vendor, is a matter of fact for the jury; and if they find they were not in possession of the vendor, then the bill of sale is not evidence, although it has been recorded, without proof of its execution, it not, in such case, being a paper authorised by law to be recorded.

3. *The first bill of exceptions.* The plaintiff offered in evidence that the defendant, in the year 1782, being in possession of a number of negroes, sold them at public sale to the highest bidder; that at that sale *Thomas Gassaway*, the father of the plaintiff, purchased negro *James* in the declaration mentioned, and negro *Rachel,* the mother of

1809

Dorsey
vs
Gassaway

*Harry,* the other slave in the declaration mentioned; *Harry* not being then born. That negroes *Rachel* and *James* were then delivered by the defendant to *Gassaway,* who held and possessed them, together with *Harry* after he was born, until 1789, when he gave negroes *James* and *Harry* to his son, the present plaintiff, and then delivered possession of them to him, who held and possessed them until the year 1796, when they were taken from his possession by the defendant. They were so taken some short time before the bringing of this suit. The plaintiff then proved that *James Russell,* herein after named, was in the (now state,) then province of *Maryland* in and during the year 1772. The defendant then offered evidence to the court (a), by the oath of *Robert Young,* that he was some years past the agent of *James Russell,* of *Great Britain,* and that as his agent he was in possession of a mortgage executed by the defendant to *Russell;* that the mortgage bore date in the year 1768. That he was well acquainted with the defendant and his handwriting, and that the mortgage was signed by the defendant. That he does not remember whether the mortgage was acknowledged before any judge or justice. That it was an original paper, and that to the best of his recollection, he delivered it, about 10 or 12 years ago, to *James Clerke,* then the administrator of *Russell,* who had died before that time in *G. B.* The defendant then read to the court the letters of administration granted to *James Clerke* on *Russell's* estate, dated the 11th of August 1789. He further proved by *Young,* that the mortgage purported to be a conveyance of a number of negroes by name from the defendant to *Russell,* and amongst those negroes were two, to wit, *Scmpe* and *Cato.* He further proved to the court by the testimony of *Charles Walker,* that *Russell* shipped large quantities of goods, before the year 1763, to the defendant, and that *Charles Grahame* was the agent of *Russell.* That he was present, between the years 1760 and 1765, when *Grahame,* now deceased, and *William Lux,* now deceased, and the defendant, were together in the counting room of *Lux,* at which time the defendant executed some instrument of writing, which *Walker* witnessed, and that he never witnessed any other

(a) CHASE, Ch. J. To lay the foundation for proving that an original deed is lost, the evidence must be to the court.

executed by the defendant, in the presence of himself and *Lux.* He further offered in evidence to the court, by *Young,* that the original mortgage, herein before referred to, was delivered by him to *Clerke,* about the year 1797, for the purpose of sending the same to *Philadelphia,* to lay before the commissioners there in session, under the treaty with *Great-Britain,* to establish the claim of *Russell.* He further offered in evidence to the court, by *Edward Hall,* that *Clerke,* the administrator of *Russell,* in a conversation with him lately, informed him that all the papers delivered to him, *Clerke,* by *Robert Young,* relating to the claim of *Russell* against the defendant, were by him delivered over to *William Cooke,* Esquire, to prosecute his claim before the commissioners in *Philadelphia.* He then read in evidence to the court the deposition of *William Cooke,* Esquire, taken by consent, who proved, "that some years ago he was applied to by *James Clerke,* administrator of *James Russell,* late of *London,* merchant, to file a bill in chancery against *John Dorsey,* and *Luther Martin,* Esquire, and others, the bargainees of certain lands which they purchased of *Dorsey,* and which he had previously mortgaged to *Russell;* that among the papers delivered to him by *Clerke,* were several bonds passed by *Dorsey* to *Russell,* but the deponent cannot recollect whether the original mortgage, or a copy of it, was delivered to him. That he filed the bill in chancery, and while the suit was depending, he was applied to by *Edward Dorsey,* now deceased, to purchase sundry negroes, also included in the mortgage, and after consulting the complainant, this deponent agreed that the negroes should be valued by disinterested persons, which was done, and he sold the negroes at the valuation to *E. Dorsey,* and received from him, or from some other person on his behalf, the purchase money for the negroes, and paid the same over to the complainant. That it being afterwards ascertained that *John Dorsey* had not the legal title to the lands, or to some material part of them, at the time of executing the mortgage, the deponent exhibited a claim on behalf of *Clerke,* the administrator, to the commissioners then sitting at *Philadelphia* under the treaty of amity, commerce, &c. between *Great Britain* and *America,* and withdrew all the original papers which he had lodged in the court in the said suit, to present them, together with a memorial on behalf of the administrator, to the commission-

1809
Dorsey
vs
Gassaway

ers, in order to obtain compensation for the money paid by *John Dorsey,* into the treasury of this state, towards satis-faction of the mortgage and several bonds. That he can-not charge his memory with the particular papers referred to, and filed with the memorial in the office of the com-missioners, nor has he any recollection that any document was wanting to substantiate the claim. He has since search-ed among his own papers, and cannot find either bonds, or mortgage from *J. Dorsey* to *Russell* in his possession, and that whatever papers were lodged with the commissioners, he the deponent has heard and believes, have since been removed to *Great Britain;* and from his not being able to find any of the said papers, the deponent believes they were all lodged by him, with the commissioners, and are now in their possession in *Great Britain.*"

The foregoing evidence was offered by the defendant to lay a foundation for proving that a deed of mortgage for certain negroes was executed by the defendant to *James Russell* in 1768, under and through which the defendant claimed the negroes for which the present suit is brought, and that the deed of mortgage is not in the power, posses-sion or control, of the defendant. The defendant then produced an original record book, one of the land records of the general court, and offered to read to the court and jury the *inspeximus* of the deed, found on the records of the said court, from the defendant to *Russell,* dated the 6th of December 1768, and the marginal entry in the record book, stating said deed to be examined, as evidence of the contents of the original deed of mortgage, proved to have been executed by the defendant to *Russell* in 1768. To the reading of this paper from the record book, as evidence, the plaintiff objected.

*Shaaff, Mason,* and *Johnson,* for the Plaintiff, cited 1 *Morg. Ess.* 159, 160. *Page's case,* 5 *Coke,* 54. *Style,* 445. *Trials Per Pais,* 355, 434. *Eden vs Chalkill,* 1 *Keb.* 117. *Cheney's Lessee vs. Watkins,* 1 *Harr. & Johns.* 527. *Hall vs. Gittings's Lessee, (ante* 380.) *Peake's Evid.* 97, 110; & *Bull. N. P.* 255, 256.

*Martin, (Attorney General,)* and *Key,* for the defendant, cited *Hall vs Gittings's Lessee, (ante* 380.) *Peake's Evid.* 96; and 1 *Morg. Ess.* 161.

1809
Dorsey
vs
Gassaway

CHASE, Ch. J. The question before the court now, is different from what it was on the former trial. Here the defendant has laid a foundation whereon to authorise the *inspeximus* of the deed to be read; and the question is, what other kind of evidence will be sufficient for that purpose?

Where a deed is lost or not in the power of the party to produce it, it is only necessary to show an examined copy, or prove the contents of the paper.

The court consider the *inspeximus* in this case to be a true copy. The clerk had authority to record the deed as to the real estate, and the copy is good as to the real estate. If it is a true copy as to the land, it is equally so as to the personal estate. The court consider it the next best evidence to the deed itself, and far preferable to parol proof.

This case is distinguishable from that of *Cheney vs. Watkins.* In that case there was no question about the *inspeximus* of the deed, that the court recollect of.

In the case of *Gittings vs. Hall,* it was the *inspeximus* of an ancient deed which needed no recording, and where the clerk had no authority to record it; but as the possession had gone with the deed, it was on those two grounds read.

The court are of opinion, that the *inspeximus* of the deed of mortgage, from the defendant to *James Russell,* is legal evidence, and admit the same to be read in evidence to the jury. The plaintiff excepted.

4. *The second bill of exceptions.* The defendant then read in evidence an affidavit, (on the files of the treasury,) made by him on the 18th of May 1781, before *Allen Quynn,* Esquire, a justice of the peace of *Anne-Arundel* county, [*See 2 Harr. Ent.* 250, *and the act of October* 1780, *ch.* 5, *s.* 11.] He also read in evidence the entry in the books of the treasurer, of the payment into the treasury by him, the defendant, on account of a debt due to *James Russell.* [*See 2 Harr. Ent.* 250 *and* 251, and the *act of October* 1780, *ch.* 5, *s.* 11.] He also produced and offered to read the record and proceedings in the court of chancery on his obtaining the benefit of an act of insolvency, to prove that *William McLaughlin* and *Archibald Moncreiff,* were duly

1809.

Dorsey
vs
Gassaway

appointed his trustee (a). He also offered in evidence, that *M'Laughlin* and *Moncreiff* respectively accepted of the trust, and that *M'Laughlin* died about the year 1795, and that *Moncreiff* survived him; and also offered to read in evidence, from the records of the general court office, certain entries of a suit brought in that court in the year 1797, by *Moncreiff*, as surviving trustee of the defendant, against *Thomas Gassaway*, and the renewals thereof. He also offered to read in evidence the record and proceedings in the court of chancery in 1797, of *Thomas Gassaway's* having applied for and obtained the benefit of an insolvent law, in order to prove that *Thomas Gassaway* never paid any consideration for the negroes before his voluntary gift of them to his son, the plaintiff, nor at any time since (b).

CHASE, Ch. J. The court refuse to admit the above facts to be given in evidence to the jury, to prove that *Thomas Gassaway* never paid any consideration for the negroes before his voluntary gift of them to his son, the plaintiff, nor at any time since; the court being of opinion, that the acts and declarations of the defendant in this case, subsequent to the sale by him to *Thomas Gassaway*, and whatever was consequent thereon, are not evidence to defeat the claim of the plaintiff. But the court are of opinion, that the affidavit and payment into the treasury, by the defendant in 1781, prior to the sale by him to *Thomas Gassaway*, are admissible evidence to prove the defendant was indebted to *James Russell*, and made the payment into the treasury in the manner therein stated. The defendant excepted.

5. *The third bill of exceptions.* The defendant then read in evidence, the affidavit made by the defendant before *Allen Quynn*, and on the files of the treasury; also the entry in the books of the treasurer, of the payment by the defendant into the treasury on account of a debt due to *Russell*; and also produced and offered to read the record and proceedings in the court of chancery, on the application of the defendant, and his obtaining the benefit

(a) The schedule returned, stated that *Russell* was a creditor, and *Thomas Gassaway* a debtor.

(b) *Gassaway*, in his schedule, returned the trustees of the defendant his creditors.

1809
Dorsey
vs
Gassaway

of an insolvent law, to prove the acknowledgment and admission of the defendant in 1787, that his mortgage to *Russell* in 1763 was then outstanding unsatisfied. The defendant then prayed the opinion of the court, and their direction to the jury, that such evidence, though subsequent to the sale of the negroes by him to *Thomas Gassaway*, is competent evidence against *Gassaway*, or the plaintiff, he the defendant then holding and possessing the residue of the mortgaged property, or part thereof.

CHASE, Ch. J. The court reject the evidence. The defendant excepted.

6. *The fourth bill of exceptions.* The plaintiff then produced, and offered to read in evidence, (for the purpose alone of proving that the mortgage from the defendant to *James Russell* was paid and satisfied before the commencement of the war between *America* and *Great-Britain*,) a bill in the court of chancery filed by *James Clerke*, administrator of *Russell*, against *Luther Martin, William Buchanan, Archibald Moncreiff, Robert Dorsey*, and *Wm. H. Dorsey*, with all the proceedings, and the decree of the chancellor thereon. To the reading of which the defendant objected.

CHASE, Ch. J. The proceedings are between different parties, and, therefore, cannot be used as evidence in this case. If the decree had been that the mortgage debt was unsatisfied, it could not be used against the plaintiff, and the rule must be mutual.

Although the answer is in the handwriting of the defendant, yet he may have only acted as a clerk. He has not himself sworn to it.

The court refuse to let the proceedings be read to the jury for the purpose required by the plaintiff's counsel. The plaintiff excepted.

7. *The fifth bill of exceptions.* The plaintiff then cross examined *Robert Dorsey*, a witness produced on the part of the defendant, and proved by him, that he appeared, together with *Archibald Moncreiff* and *William H. Dorsey*, as the trustees of the defendant in this cause, to a bill in the court of chancery filed against them by *Clerke*, administrator of *Russell*, and made the answer, now produced, to that bill. That he obtained his knowledge of the respective facts, stated in that answer, from the de-

fendant in this cause, and from his books, and that the answer is in the handwriting of the defendant in this cause. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if the jury are satisfied, from the evidence, that the respondents, named in the said answer, obtained their knowledge of the facts stated therein from the defendant, and the answer is in the handwriting of the defendant in this cause, that then the answer is evidence to prove the mortgage debt had been discharged as is stated in the answer.

CHASE, Ch. J. The court are of opinion, that the declarations of the defendant are evidence admissible to the jury, and that the witness may recur to the answer to refresh his memory as to the declarations made to him by the defendant. But the court refuse to allow the answer to be read in evidence to the jury. The plaintiff excepted.

8. *The sixth bill of exceptions.* The plaintiff then offered in evidence, by the testimony of *Robert Dorsey*, that the contract and purchase made by *Edward Dorsey*, with and of *William Cooke*, esquire, of the negroes mentioned in the declaration, as stated in the deposition of *Cooke*, was made by *Edward Dorsey*, at the request and for the benefit of the defendant, and that the money or price paid to *Cooke* for the slaves, was the money of the defendant; that *Edward Dorsey*, or his estate, he being dead, have no interest in the slaves, but that the defendant is the only person claiming under the purchase from *Cooke*. The defendant further offered in evidence, that he purchased the negroes in controversy in 1796, through *Edward Dorsey*, from *Clerke*, the administrator of *Russell*; that the negroes were sold by the defendant to *Thomas Gassaway*, under whom the plaintiff claims, in 1782. And to prove that he the defendant, between 1782 and 1796, obtained the benefit of an insolvent law, he produced in evidence the insolvent law passed at April session 1787, *ch.* 34; and also produced and read in evidence the record, proceedings, and release of him the defendant, under that insolvent law. He further offered in evidence, that the negroes in controversy are the descendants of negro *Rachel*, included in the mortgage from the defendant to *Russell*, and sold, as before stated, by the defendant to

*Thomas Gassaway* in 1782. The plaintiff then prayed the court for their opinion and direction to the jury, that if from the evidence the jury are satisfied that the purchase of the negroes named in the declaration made by *Edward Dorsey*, as stated in the deposition of *William Cooke*, was made by *Edward Dorsey*, by the authority and direction of the defendant, and for the benefit of the defendant, and that the purchase money paid to *Cooke* for the negroes was the money of the defendant, that then the plaintiff is entitled to their verdict for the negroes in the declaration named, and damages for the detention thereof.

CHASE, Ch. J. The defendant cannot be permitted to disaffirm his own sale. He cannot be suffered to set up *his discharge under an insolvent law to disaffirm his prior acts*.

The court are of opinion, that if the jury find the mortgage was satisfied in the year 1782, when the defendant sold the negroes to *Thomas Gassaway*, that the plaintiff has a good title to them.

The court are also of opinion, that if the mortgage was subsisting in 1782, and the defendant sold the negroes, claiming the absolute ownership in them, and for a full consideration, although as to *James Russell* his sale would transfer only the equitable interest in the negroes; yet as between the vendor and vendee, the operation of the contract would be to pass the absolute ownership in the negroes to the vendee, and according to good faith and honesty the subsequent acts of the defendant, in perfecting his title to the negroes, will enure in law to confirm, and not to defeat, his contract with *Thomas Gassaway*. The defendant excepted.

9. *The seventh bill of exceptions.* The plaintiff then offered in evidence, by the testimony of *Robert Dorsey*, that he understood from his father, the defendant, since the year 1790, that he had made considerable payments and remittances to *Russell*, between the years 1763 and 1776, in sterling money, amounting to £3,915 18 2; that *Russell's* administrator claimed the right to apply the money so paid to the satisfaction of certain debts due from the defendant to *Russell*, upon open account, contracted after the date of the mortgage, and that the representatives of

1809

Dorsey
vs
Gassaway

the defendant claimed to apply the payments to the satisfaction of the mortgage. The plaintiff then prayed the court for their opinion and direction to the jury, that if they are satisfied that the said sums were paid at the times above stated, and there is no evidence to satisfy them that the payments when made were particularly applied to any specified debt, either by the defendant or *Russell*, that then the law will apply the same to the satisfaction of the mortgage.

Chase, Ch. J. There can be no doubt but the law will apply the payments to the satisfaction and discharge of the mortgage. The court give the direction prayed. The defendant excepted.

10. *The eighth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that the declarations of the defendant, which are said to have been made by him since the sale made by him to *Gassaway*, and since the insolvency of him the defendant, cannot be used in evidence by the plaintiff to the injury of the title and interest of *Russell*, or any other person claiming under *Russell*.

Chase, Ch. J. The court are of opinion, that the declarations of the defendant, are evidence against him. The defendant excepted.

11. *The ninth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that as the defendant only insisted that the mortgage was paid by certain payments being made, which ought to be applied in the first instance to the mortgage in preference of other debts, not because he did not owe more, but that what he paid should be first applied to the mortgage— that the principle, that the payments so made, should apply to the discharge of the mortgage, should only be carried into effect in favour of *bona fide* purchasers having bought and paid for the articles, and not in favour of the plaintiff, whose father had not paid for the negroes by him purchased.

Chase, Ch. J. The court are of opinion, that the payments made by the defendant to *Russell*, if the jury shall find they were made as stated, ought to be applied to the

1809.

Dorsey
vs.
Gassaway

discharge and satisfaction of the mortgage in favour of the plaintiff, unless the jury shall find that *Thomas Gassaway* made the gift to his son, the plaintiff, to defraud his creditors. The defendant excepted.

12. *The tenth bill of exceptions.* The defendant further prayed the opinion of the court, and their direction to the jury, that unless the jury believe that the mortgage money was satisfied before the sale made by the defendant, or that the plaintiff, or his father, under whom he claims, had paid the purchase money for the negroes to the defendant or *Russell*, or some person entitled to receive the same, that the plaintiff was not entitled to recover any other than nominal damages.

*Martin*, (Attorney-General,) for the Defendant, cited 3 *Bac. Ab.* tit. *Grant*, (D.) 382. *Walker vs. Constable*, 1 *Bos. & Pull.* 306. *Moses vs. Macferlin*, 2 *Burr.* 1005; and *Esp. N. P.* 101.

CHASE, Ch. J. The jury may give what damages they think the plaintiff is justly entitled to as an equivalent for the injury sustained.

The court are of opinion, that it is within the province of the jury to ascertain and fix the quantum of damages, as an equivalent for the use of the negroes, according to what they may think right on consideration of the evidence; and that they are not restrained, by any principle of law operating on this case, from the full exercise of their judgment. The defendant excepted.

It was admitted, and it is to be considered as part of the statement in this cause, on which the court has given its opinions, that *James Russell*, the alleged mortgagee of the defendant, was in the year 1763 a subject of his *Britannic* majesty, residing in *Great Britain*; that in the year 1772 he was in *Maryland* on a visit, and soon returned to *Great Britain*, and continued to reside there from the year 1774 to his death in 1787, a subject of the crown of *Great Britain*; and that on the 4th of July 1776, the then province, now state of *Maryland*, became an independent government, and from that day until the 30th of September 1783, open war existed between this state and the king of *Great Britain*.

1809

Hamilton
vs.
Beall

Verdict and judgment for the plaintiff. The defendant appealed to this court, and on the death of the appellee, his executors were made parties.

The questions arising under the *second, third, sixth, seventh, eighth, ninth* and *tenth* bills of exceptions, were argued before Polk, Buchanan, Nicholson, and Earle, J. by

*Martin*, for the Appellant; and by
*Johnson,* (Attorney-General,) for the Appellee.

The Court agreed with the General Court in the opinions expressed in the several bills of exceptions taken on the part of the defendant in that court.

JUDGMENT AFFIRMED.

---

June.

HAMILTON VS. BEALL, *et al.*

A H, being entitled to a lot of ground, but ignorant of his right, was induced by the fraud and imposition of the agent of B B, in 1791, to execute a conveyance to B, for the lot for a small consideration. He filed his bill in chancery in 1798, to have the conveyance vacated, &c. The answers of B B's representatives, and the agent, denied all fraud, &c. Decreed, that as it does not appear that a fraud was perpetrated, or if it was, that B B was a contriver or privy to, or partaker of it—as the complainant suffered many years to elapse before he filed his bill—as the property hath since been greatly improved and changed, and hath devolved on several representatives —as the argument from convenience ought always to have influence, the complainant is not entitled to recover. Bill dismissed.

APPEAL from the Court of Chancery. The complainant, (now appellant,) by his bill filed on the 20th of April 1798, stated that *George Gordon,* being seized of certain lots in fee in *George-Town,* by his will dated 1766, devised the house and lot No. 48, and the *acre of land* whereon the old warehouses are erected, in fee, to his grandson *George F. Hamilton,* and lot No. 52, with the warehouses thereon, in fee, to his grandson *Charles E. Hamilton.* That after the death of the testator, *George* and *Charles* respectively entered, &c. That they both afterwards went to sea, and died intestate, leaving *Thomas Hamilton* their heir at law. That *Thomas Hamilton,* being seized of the lots devised to *George F. Hamilton,* died in 1783, without having made any valid testamentary disposition of the lots, his will not having been executed in the manner prescribed by law to pass real estate; and having died intestate as to the lots, the same descended to *William Hamilton,* who was his eldest son and heir at law. That *William Hamilton* afterwards died, having made his will in June 1786, by which the lots are not particularly devised, but if they passed by the expression in the will, it was to the complainant, and who was his eldest son and heir at law. That after the death of his father, the com-