JOHN McTAVISH AND EMILY McTAVISH, EXECUTRIX OF CHARLES CARROLL, OF CARROLLTON,

vs.

WILLIAM CARROLL.

DECEMBER TERM, 1847.

[APPLICATION OF PAYMENTS.]

THE general rule upon the subject of appropriation of payments, gives to the debtor, in the first place, the right to make the application, and then upon his omitting so to do, to the creditor.

If a party is indebted on mortgage and simple contract, and making a payment, neglects to apply it, the law will apply it to the mortgage or bond, as most beneficial to the debtor ; and such is the undoubted rule where no particular application is made by either party.

Payments made generally, are applied in extinguishment of debts bearing interest, where there were others due the same creditor, not carrying interest.

If a party is indebted on several accounts and makes a payment, he may apply it to either ; if he does not, the creditor may do so, and if neither does, the law will appropriate it, according to the justice of the case.

[In this case certain land was sold under a decree of the court to satisfy a mortgage debt; and a surplus remaining in court, after its payment in full, petitions were filed by various parties, claiming to be entitled to have their debts paid out of the residue of the fund.

The question decided in the case, the facts of which are fully stated by the Chancellor in his opinion, relates to the doctrine of the appropriation of payments :]

THE CHANCELLOR :

The question now submitted for decision has reference to the distribution of the fund raised by the sale of the property, under the decree of the 22d of September, 1835.

It appears, by the proceedings, that the late Charles Carroll of Carrollton, in the years 1829 and 1830, loaned to the defendant, William Carroll, the sum of $3500, to secure the repayment of which, the latter assigned to the former a land office certificate, for a tract of land called "Canal and Rail Road," containing upwards of ten thousand acres ; and that, to secure the repayment of a further loan of $500, made on the 20th of October, 1830, the defendant assigned to the said Carroll of Carrollton, similar certificates of four tracts, called "Water Lot," "Villiers," "Webster," and "Take All."

Upon the certificate for the tract called "Canal and Rail Road," a patent was obtained by the complainant's testator on the 11th of March, 1830.

Agreements were signed by the said testator, dated respectively, on the 12th of January, 1830, and the 22d of April, 1831, showing the assignments to have been made by way of security merely, and constituting them in effect, mortgages, and they were so treated in the bill and decree, which was passed for the sale of the property.

The trustee appointed for the purpose, made sale of the several parcels of land in the lump, on the 8th of July, 1846, for the gross sum of $6950, and the sale has been duly ratified and confirmed by the court ; and the question is, how shall the

14*

net proceeds of this sale, be apportioned among the parties who have preferred claims to it?

Since the decree, various claimants have presented themselves, insisting upon their right to participate in, or have appropriated to their use, portions, or the whole of the surplus of these sales, after paying the mortgage debt of the complainants.

On the 10th of May, 1839, Carroll, the mortgagor, conveyed to Richard Caton, for the sum of $1250, two portions of the tract called "Canal and Rail Road," designated as lots numbered 15 and 16, and containing, the one 273 acres, and the other 342 ; and the grantee in this deed being dead, Josias Pennington, as his administrator, and his heirs at law, filed their petition on the 4th of February, 1847, praying that a portion of said proceeds of sale may be paid to them.

On the 17th of June, 1842, two other parts of the same tract were conveyed by way of mortgage, by the same William Carroll, to George Neilson, administrator of James Neilson, to secure the sum of $2000. These portions contain together the quantity of 374 acres.

And on the 18th of July, 1843, the same party conveyed to Jacob Snively, one individual moiety, of all those several tracts in trust for the payment, rateably, of certain of the creditors of the grantor. And these two parties, Neilson and Snively, are also claimants of portions of the fund raised by the sales.

In addition to these, J. J. Speed, by his petition, filed on the 18th instant, insists upon his right to have a part of the money paid to him upon the grounds set forth in his petition.

By an account filed by the complainants on the 31st December, 1846, there appears to have been other transactions than the mortgage between Charles Carroll of Carrollton and the defendant, in respect of which the defendant became indebted to him in other sums of money than those secured in that way ; and the same account shows that the defendant made payments from time to time of various sums of money, without any application being made by either party of such payments, towards the satisfaction of either of the debts.

In the account marked A, stated by the auditor, these sums thus unappropriated by either the debtor or the creditor, are applied to the satisfaction in part of the mortgage debt, which the Auditor supposes, for the reason given by him, to be the proper application. By this account, there remains an unappropraited balance of $2480 56, after paying the complainant's claim ; one moiety of which is assigned to Jacob Snively, and the other to the defendant.

In account B, stated according to the views of the complainants, the residue is reduced to $1489 93, which is assigned to the same parties in like proportions.

Exceptions have been filed to these accounts by the parties interested ; the one side, insisting upon the propriety of the application of the payments in the one account, and others in the other.

The Chancellor thinks, that the appropriation of the payments made by the Auditor in the account A, is the proper one, that is, to the payment of the mortgage debt, as being most beneficial to the debtor.

The general rule upon the subject of the appropriation of payments, is laid down by the Court of Appeals, in the case of *Mitchell* vs. *Hall,* 4 *Gill & Johns.,* 301, giving the right to the debtor, in the first place to make the application, and then upon his omitting so to do, to the creditor.

In this case, however, there was no appropriation of these payments made by either party, and the question is, how, in the absence of such appropriation, will the law apply them ?

It was said by the general court, in the case of *Gwinn* vs. *Whittaker,* 1 *Harr. & Johns.,* 754, that if a party is indebted on mortgage and simple contract, and making a payment, neglect to apply it, the law will apply it to the mortgage or bond, as most beneficial to the debtor. And in the case of *Dorsey* vs. *Gassaway,* 2 *H. & J.,* 402, 412, the same court said, that such was the undoubted rule, where no particular application, by either party was made. There was an appeal in this last case, and the judgment of the general court was affirmed by the appellate court.

The rule that payments made generally, will be applied in a way most beneficial to the debtor, is further illustrated by the cases in which such payments have been applied in extinguishment of debts, bearing interest, where there were others due the same creditor not carrying interest. *Hayward* vs. *Lomax*, 1 *Vern.*, 24.

In this case, it is true, that it is not very important to the debtor, whether the payments are applied to the debts secured by the mortgage, or to those which are not so secured, as the surplus in either case will be insufficient to pay the other claims against him.

It is, however, of some importance to the other creditors, as the surplus applicable to the payment of their claims, will be diminished or enlarged, as the one, or other rule is adopted. The rule, as laid down in some of the cases is, that if a party is indebted on several accounts, and makes a payment, he may apply it to either, if he does not, the creditor may do so; and if neither does, the law will appropriate it according to the justice of the case. *United States* vs. *Kirkpatrick*, 9 *Wheat.*, 720; *Cremer* vs. *Higinson*, 1 *Mason*, 323. And it seems to the Chancellor, that the justice of the case, in view of the interests of third persons, as well as a proper regard to the rights of the debtor, requires that the payments should be applied to the satisfaction of the mortgage debt, and an order will be passed for that parpose.

The case is not now in a condition to enable the court to make a final disposition of the surplus among the various contending creditors. It would seem that the surplus should be assigned to those creditors according to the date of their respective liens, but the difficulty arises from the fact, that the different deeds and mortgages are for parcels of the premises mortgaged to Carroll of Carrollton, and the whole being sold in a lump, it is not easy to say how much of the purchase money should be awarded to the several parties. The case will, however, be sent to the Auditor, with directions, as far as practicable, to appropriate the surplus, after paying the mortgage debt of the complainant, to the satisfaction of the claims of the oth-

er creditors; due regard being had to the dates of the instruments under which they respectively claim, and the extent of property conveyed to each of them severally.

The Chancellor is also of opinion, that the sum which may be awarded to the parties mentioned in the petition of Josias Pennington, administrator of Richard Caton, and others, should be awarded to the heirs at law of said Caton, and not to his administrator.

———

[After this decision, further testimony was taken, relative to the value of the parcels of land respectively mortgaged to Neilson, and sold to Caton, as compared with the value of the whole tract covered by the prior mortgage to Charles Carroll of Carrollton. The parts conveyed to Caton contained together six hundred and fifteen acres, and those mortgaged to Neilson contained three hundred and seventy-four acres of land. As the mortgage debt of Carroll of Carrollton was a lien upon the whole tract, and Caton and Neilson had liens upon portions of it only, the question was, whether the lien of the former should be thrown upon the whole fund, and the two latter confined in their claims to so much of the residue as was proportionate to the value of the portions covered by their liens, compared with the value of the whole tract? or, whether the mortgage debt of said Carroll of Carrollton should be thrown, in the first place, upon so much only of the whole tract as was not embraced in these two subsequent deeds, and if that was not sufficient, then upon these two portions of the whole tract; and thus leave the whole surplus to be applied proportionately to the claim of Caton and that of Neilson?

Such of the facts as are necessary to explain the case, and not given in the previous report, are stated by the Chancellor in his opinion.]

———

THE CHANCELLOR:

This case standing ready for further directions on exceptions to the report of the Auditor, and having been submitted during the sittings of the term, by the solicitor of George Neilson, ad-

ministrator of James Neilson, deceased, a creditor and mortgagee of a portion of the property in the proceedings mentioned, is now, according to the rule, laid before the Chancellor for decision, upon notes, in writing, by the solicitors of the parties.

After reading the notes, and examining and considering the proceedings in the cause, I have come to the conclusion, that the mortgage debt of the complainants, it being the oldest incumbrance, must be first paid; but, that this shall be done so as to inflict as little injury as possible upon those whose claims stand posterior to it in date, and that to accomplish this end, it was proper to adopt the course pursued by the Auditor, as stated in his report of the 13th of November last. That is, that the mortgage debt of the complainants should be so cast upon the mortgaged property, as without injury to the prior incumbrance, should leave the residue of the net proceeds of sale to satisfy junior incumbrances and subsequent deeds in the order of their priority.

I am, therefore, of opinion, that as the mortgage to Neilson and the deed to Richard Caton are anterior in point of time to the instruments under which Joseph J. Speed and Jacob Snively claim, they must be preferred to them; and, as by the decree of the 30th of October last, so much of the proceeds of the sales as Richard Caton should appear to be entitled to, were directed to be applied to the payment of his debts, such application must now be made.

The only question in the case, which remains, and which seems to present any difficulty, respects the portions of the fund to be applied to the payment of the mortgage of Neilson, and to the creditors of Caton.

The property embraced in the mortgage to Neilson, and in the sale to Caton, consisting of lots numbered 15, 16, 226 and 145, constitute in their area but a small portion of the entire tract sold, and the difficulty results from the fact, that the entire tract was sold in one mass at so much per acre, so that nothing appears upon the face of the proceedings by which we can determine the value of these particular lots, relatively to the residue of the whole tract.

It is objected by the counsel of one of the parties interested adversely to Neilson, that if the latter thought the lots mortgaged to him possessed any peculiar value, he should have required them to be sold separately, and not having done so, he cannot now insist upon receiving more of the proceeds of sale than is attributable to the quantity of land contained in his mortgage.

But the answer to this, which I consider sufficient, is, that neither Neilson nor Caton were parties to the 'cause under which the property was sold ; and, that the sale was made under a mortgage prior in date and paramount in title to the deed under which they claimed.

This objection then being, as I think, untenable, the question resolves itself into one of fact, and that, of course, depends upon the evidence taken in relation to it.

In the Auditor's report of November last, in speaking of the evidence of the defendant, William Carroll, and that of James H. Stimpson, the only witnesses who had then been examined upon this point, he remarked, that their testimony was so completely at variance as to be altogether irreconcileable ; and, he submitted the propriety of authorizing the parties to take further proof to remove the difficulty. An order was subsequently passed for that purpose, and upon reading the depositions taken under this last order, and considering it together with the proof previously on file, I am very decidedly of opinion, that the lots in question, numbered 15, 16, 145 and 229, were worth, at least, as much as all the rest of the property comprehended in these proceedings ; and, therefore, after the full satisfaction of the mortgage to the late Charles Carroll of Carrollton, the surplus proceeds of sale must be applied, in proper proportions, to the payment of the mortgage to Neilson, and to the creditors of Richard Caton.

Wherefore, it is ordered, this 28th of January, 1850, that this case be, and the same is hereby, referred to the Auditor, with directions to state an account accordingly. Exceptions of the parties at variance with this order are overruled.

[No appeal was taken from either of the orders in this case.]