TIMOTHY MOSHIER

v.

DAVID NORTON et al.

*Filed at Ottawa May 14, 1881—Rehearing denied September Term, 1881.*

1. MORTGAGE—*accounting by mortgagee in possession.*   Ordinarily a mortgagee in possession is only required to account for the actual receipts, less such sums as he may have paid for the taxes and necessary repairs; but he will be answerable for any gross neglect or willful default resulting in loss to the mortgagor.

2. Where the mortgagee in possession resided twenty-five miles from the mortgaged premises, and occupied them through a tenant, it was *held*, that general evidence of the rental value, what amount of crops was raised by others on other lands, and opinions of what ought to have been raised or what was raised, which was greatly variant, was not sufficient to show that it was from willful default or gross negligence of the mortgagee that the receipts from his tenant were not greater.

3. SAME—*mode of stating account between mortgagor and mortgagee in possession.*   In stating an account between a mortgagor and the mortgagee in possession, any surplus of receipts in any year above all the interest then due, and disbursements, should be applied in reduction of the principal, irrespective of the fact whether there was or was not interest in arrear at the time the mortgagee took possession.

4. SAME—*mortgagee in possession suffering sale for taxes, not allowed amount of redemption.*   If the mortgagee in possession suffers the lands to be sold for taxes, he will not be allowed the amount paid by him to redeem, but only the amount of the taxes, with interest.

5. RES ADJUDICATA—*matters decided on prior appeal.* On a second appeal to this court, the propriety of the decision of this court as to a point in the case on the first appeal, is not open for review. Its reconsideration can be had only by a rehearing.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Stark county; the Hon. DAVID McCULLOUGH, Judge, presiding.

This was a bill in chancery, filed September 6, 1866, by Timothy Moshier, against David Norton and others, to foreclose a mortgage of certain lands in Henry county, executed by the latter to the former on November 4, 1857, to secure the payment of a promissory note of the same date made by Norton to Moshier, for $6000, payable two years after January 1, 1858, with interest payable annually, at the rate of 10 per cent per annum. Norton had given a prior mortgage on the premises for $1000, at the same rate of interest, to one Miles, which the latter foreclosed by *scire facias,* and on August 4, 1866, Moshier redeemed therefrom by payment of the sum of $2782.50, and in his bill sought to recover likewise this redemption money, with 10 per cent interest thereon. In March, 1862, complainant took possession of the mortgaged premises, and has remained in possession ever since. The defendants answered, setting up usury in the $6000 mortgage, and that complainant had received his pay for the moneys due him from the rents and profits of the property.

The circuit court found there to be usury in the note and mortgage, and on August 4, 1875, entered a decree for $30.48 in favor of complainant. From this decree an appeal was taken to this court, which reversed the decree of the circuit court, finding that the note and mortgage were free from usury, and also allowing 10 per cent interest upon the redemption money paid to redeem from the Miles mortgage, the circuit court having allowed but 6 per cent. (*Moshier* v. *Norton et al.* 83 Ill. 519.)

After the cause was remanded to the circuit court of Henry county, the venue was changed to the circuit court of Stark county. The answer was amended, setting up more specifically the defence of usury, and some further testimony was taken. The latter court, at the March term, 1878, referred the cause to the master, with directions to report upon certain specified points, among which were, the reasonable rental value of the land, the value of the crops raised when the complainant had occupied the land, and when he had rented it what had been received, and the value of the landlord's share of the crops raised. The master made report, to which exceptions were taken by the complainant, and overruled, and at the March term, 1880, the cause coming on to be heard, the court found the note and mortgage to be free from usury, and after other findings, "the court further finds that complainant leased the said land to one Elmore, during 1862; that in 1863 he put said premises into the possession of his son, with the intention of giving him the rents and profits; that in 1864 complainant farmed the same himself, under the supervision of hired help, and that from 1865 to 1879, inclusive, complainant leased the same to one Osgood for a share of the products; but the court finds it impossible, for want of proper accounts and the insufficiency of the evidence, to ascertain the actual products of said land from year to year, or the value thereof to be charged to the complainant, in an accounting between the complainant and defendants. The court further finds, that in addition to the rents specified in the master's report, complainant has received from the crops of 1878 the sum of $983.15, and from the crops of 1879 the sum of $1409.40, and no more; but the court can not, from the evidence, find the amount of the actual products of said land, or the value thereof, for these years; wherefore it is considered by the court that said complainant ought to account for the reasonable rental value of said lands from the first day of March, 1862, to the first day

of March, 1880. The court finds that there are in said mortgaged premises 489 acres of tillable land, and that the reasonable rental value thereof, in cash or grain rent, taken one year with another, is, for the years 1862 and 1863, $1 per acre; for the years 1864 to 1867, inclusive, $3 per acre, and for the years 1868 to 1879, inclusive, $3.50 per acre."

There was a further reference to the master to state the account on this basis. The master reported, that in accordance with the rule prescribed by the court for making the computation, the rents of the premises had overpaid the complainant his whole claims against Norton, principal, interest and taxes, the sum of $2111.62, which the master reported was due from the complainant. The court, after overruling complainant's exceptions to the report, approved the same, found that complainant had received of rents $2111.62 more than his mortgage debt and all disbursements, and dismissed the bill. On appeal to the Appellate Court for the Second District the decree was affirmed, and complainant appeals again to this court.

Messrs. MILLER & FROST, and Mr. MILES A. FULLER, for the appellant:

The court erred in making annual rests, and applying the rents to the reduction of the principal annually, when the law is, that if rent be in arrear at the time the mortgagee takes possession, annual rests should not be made until the whole mortgage debt is paid. Story's Eq. Jur. sec. 1016 a; *Finch* v. *Brown*, 3 Beav. 70; *Sheppard* v. *Elliott*, 4 Mad. 254; *Wilson* v. *Cluer*, 3 Beav. 136; *Gordon* v. *Lewis et al.* 2 Sum. 147; *Bennett* v. *Cook*, 2 Hun, (N. Y.) 526; *Green* v. *Westcott*, 13 Wis. 606. See, also, Bac. Ab. Title Mort. (sub title F,) vol. 7, 170.

Story, in the section cited, says: "The court erred in charging the complainant with the rental value of the mortgaged premises, instead of the sums actually received by him."

Mr. C. C. WILSON, for the appellees:

It is not the law that annual rests should not be made until the entire mortgage debt is paid, even though the interest be in arrear at the time of the entry, but the rule in this country is, that whenever the rents exceed all the interest then due, annual rests should be made, and the excess applied to reduce the principal, the receipt of rents being like any other payment on the mortgage debt. Jones on Mort. secs. 1139, 1140; *Van Vronker* v. *Eastman*, 7 Metc. 157; *Green* v. *Westcott*, 13 Wis. 678.

In this State it is the settled rule that a mortgagee in possession is liable to account for the rents actually received, or which might have been received by reasonable care and diligence. *McConnel* v. *Holbook*, 11 Ill. 61; *Roberts* v. *Fleming*, 53 id. 196; *Harper et al.* v. *Ely*, 70 id. 581; *Mansfield* v. *Alwood*, 84 id. 497.

If the mortgagee has kept no proper accounts of the rents and profits received by him, he is chargeable with what he might have received, and must be presumed to have received by the use of ordinary care. Jones on Mort. sec. 1124; *Dexter* v. *Arnold*, 2 Sum. 108; *Van Buren* v. *Olmstead*, 5 Paige, 9.

Also, in the same section, the author says: "If the mortgagee be unable to render an account, he is chargeable with a fair occupying rent," and cites *Montgomery* v. *Chadwick*, 7 Iowa, 114; *Gordon* v. *Lewis*, 2 Sum. 150; *Clark* v. *Smith*, 1 Saxt. 121.

A mortgagee is bound to keep proper accounts of the rents and profits received by him, and to have them ready to produce when called for; for to this extent, at least, of being required to keep and present a proper and honest account, he is the trustee of the mortgagor, and to hold him to be less would open the door to frauds of the grossest kind. Jones on Mort. sec. 1115; 2 Washburne on Real Prop. 116, (3d ed.); *Griffin et al.* v. *The Marine Co. of Chicago et al.* 52 Ill. 142.

A mortgagee in possession is not entitled to compensation for taking care of and renting the estate, even where there is such an agreement between himself and the mortgagor. Jones on Mort. sec. 1132 ; *Moore* v. *Cable,* 1 Johns. Ch. 385 ; *French* v. *Baron,* 2 Atk. 120.

The reason given for this rule is, that it would tend directly to facilitate usury and oppression. Jones on Mort. sec. 1132 ; *Scott* v. *Brest,* 2 T. R. 238.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The court below erred in decreeing that complainant should account for the reasonable rental value of the lands. This was a departure from the rule prescribed by this court when the cause was here before. We then said, "that ordinarily a mortgagee in possession is only required to account for the actual receipts, less such sums as he may have paid out for taxes and necessary repairs, unless where the evidence shows by reasonable diligence more could have been realized. Of course, he would be answerable for any gross neglect which might result in loss to the mortgagor whose premises he holds. Any more stringent rule than this, it seems to us, would be unjust and unreasonable." 83 Ill. 524.

This is in accordance with the well settled general rule upon the subject. Chancellor KENT thus states it: "If the mortgagee obtains possession of the mortgaged premises before foreclosure, he will be accountable for the actual receipts of the net rents and profits, and nothing more, unless they were reduced or lost by his willful default or gross negligence. By taking possession, he imposes upon himself the duty of a provident owner, and he is bound to recover what such an owner would, with reasonable diligence, have received." 4 Com. 185. To the same effect 1 Hilliard on Mort. 448–9.

The subject is very fully discussed in 3 Powell on Mort. 949, 1154, where it is said: "A mortgagee will not be obliged

to account according to the value of the lands, viz: he will not be bound by any proof that the land was worth so much, unless it can likewise be proved that he actually made that sum of it, or might have done had he not been guilty of fraud or willful default, as, if he turned out a sufficient tenant that held it at so much rent, or refused to accept a sufficient tenant that would have given so much for it; for it is the *laches* of the mortgagor that he lets the land lapse into the hands of the mortgagee by the non-payment of the money, and when it doth, he is only a bailiff of what he doth actually receive, but is not bound to the trouble and pains of making the most of what is another's."

As to the rents for the years 1878–1879, the court ascertained in regard thereto, from testimony taken in open court, and found that the complainant had received from the crops of 1878 the sum of $983.15, and from the crops of 1879 the sum of $1409.40, and no more.   Here are the actual receipts, and what is the reason why the well established rule of actual receipts should be discarded, and the complainant be charged the reasonable rental value of the lands, according to the conjectural estimate of various witnesses as to the probable rental value, their opinions differing in amount from $1 and less per acre to $5 per acre?   The reason given is, that "the court can not, from the evidence, find the amount of the actual products of said land, or the value thereof, for these years."   When we have the amount of the money received, what need for the number of bushels of all the grain raised?   All utility, that we can see, would be in the way of furnishing a test for the determining of whether the full amount of money had been received which ought to have been received.   But because that test was not furnished, it is not to be assumed that if it had been it would have shown complainant did not get his one-third share of the crops; and even if it had shown that, it would not have shown that it

was through any willful default or gross negligence of complainant that he failed to receive more than he did.

All the evidence in regard to the rents for these years was that of complainant himself, who. testified the above amounts to be returns from Hough & Bros., grain dealers at Galva, of the sales of his share of the crops, which had been delivered at that railroad station by the tenant, Osgood, as complainant's rent, of one-third of the crops. The number of bushels of the grain sold was specified, but complainant said he did not know the number of acres or bushels of grain raised in either year; that Osgood divided the crops, and complainant did not know whether he got his share or not.

Complainant lived in another county, twenty-five miles distant from the premises, and he seems to have trusted to the honesty of his tenant to deliver, and of the receivers of the grain to send to him, his share of the crops. In the affairs of life, trust is, and must be, reposed in our fellow-men. There is nothing here going to impeach the correctness of the. amounts returned to complainant as the proceeds of his rent for these years, and we think they should be taken as *prima facie* correct, and be the amounts for which complainant should be charged. Defendant Norton lived at Galva, and if he was apprehensive of dishonesty in the tenant or grain buyer, and wished to know the amount of the whole number of bushels of grain raised on the place, in order to try to show such fact of dishonesty, it was as easy, for aught that appears, for him to ascertain the same as for complainant. Similar remarks may be made with reference to all the other years. Complainant renders an account of the amount of the actual receipts for each one of the years, but is not able to tell the number of bushels of grain raised in any year, and because of the insufficiency of the evidence to ascertain the amount of the actual products of the land from year to year, or the value thereof, complainant seems to have been

charged with a supposed reasonable rental value, instead of with actual receipts.

The account of receipts rendered by complainant is corroborated by other testimony. The tenant who delivered the share of the crops testifies in the case, and there is no attempt to impeach, by him, the accuracy of the account, nor by any other witness, directly or specifically, but all is general, as, the rental value; what amount of crops was raised by others on other land; opinions of what ought to have been raised or what was raised, and the evidence is greatly variant. This sort of evidence is insufficient to show, in this case, that it was from the willful default or gross negligence of complainant that the receipts were not greater than as returned,—not meaning, however, to say that there may not be a case where evidence of such general character might not be of avail in this respect. Complainant lived at a distance, as has been stated; he had the place constantly under rent at the customary rent of one-third of the crops,—except for two years, when he carried it on himself,—and to a tenant who, as the evidence shows, has managed the farm reasonably well; no rent has been lost, as appearing from any evidence. The grain was delivered by the tenant as complainant's one-third share, and complainant accepted it as such, and that we conceive is all with which he should be charged. We think he might confide in the honesty of a well known tenant of such long standing until something was brought home to him to excite suspicion to the contrary, and that it is not to be imputed as gross negligence, in that he did not assume the tenant to be a dishonest man, and keep watch over him as such, to see that he did actually measure out to complainant his full number of bushels of grain, and especially where there is no evidence that the amount received was short of the full amount of the landlord's share. The presumption is in favor of honesty, and that presumption should be indulged in regard to the account rendered.

Further, the defendant Norton lived· at Galva, only five miles from the land, and the· nearest railroad station where the grain was delivered. He was concerned in the matter, and should have taken interest in it, and had opportunity to know how the farm was rented and managed, and what amount of rent was being received. If there was anything of wrong, or any cause of dissatisfaction in any respect, negligence is rather chargeable upon him in not making communication thereof to complainant.

A similar circumstance is adverted to in *Hughes* v. *Williams*, 12 Ves. 493, cited in full on page 949 b, 3 Powell on Mortgages, as showing the duty which the mortgagor owes the mortgagee in this regard, where the question was, whether the mortgagee should be charged with the rents actually received, or a greater rent, which it was claimed he ought to have obtained. Lord ERSKINE, in delivering judgment, said: "Another circumstance was, that the mortgagor, if he knew that the estate was underlet, ought to have given notice to the mortgagee, and to have afforded his advice and aid for the purpose of making the estate as productive as possible. * * * In this instance not only such notice was not given, but during the whole period of sixteen years, while the mortgagor was out of possession, he never stated that the estate was not managed as it might be."

These are observations which are pertinent to the present case.

Complainant takes exception to the mode of stating the account in making annual rests. The master reported that on January 1, 1870, the principal sum due from Norton to complainant was $8782.50; that the accrued interest thereon to that time was $8240.93; that the net rents up to that time were $8617.47. As the amount of rents at that time exceeded all interest due, said amount of the rents to that time was *deducted from* the whole amount of principal and interest at that time, leaving a balance due complainant of

his principal sum, $8405.96, on January 1, 1870. Then to this sum was added the interest for one year, the taxes paid in 1870, and interest thereon to January 1, 1871, which made the sum of $9490.48, from which was deducted the rent of 1870 as found, $1711.50, leaving a balance due complainant of $7778.98, at that date. Then follow similar annual statements of balances on the first day of January in each year, up to and including January 1, 1880, the rents as found for each year exceeding the interest and taxes for the year.

Complainant concedes the mode adopted by the master in making annual rests was the proper one when no arrears of interest are due at the time the mortgagee enters into possession, but that where the interest of the mortgagee is in arrears, as in the present case, when the mortgagee takes possession, the court will not require annual rests to be made, even although the rents and profits may exceed the annual interest, nor until the principal of the mortgage debt is entirely paid off. There is authority for this position and distinction. It appears to be supported by Judge Story in his Eq. Jur. vol. 2, sec. 1016 a, and the English cases cited by him. But there are American decisions which lay down a different rule, as we regard, and agreeing with the one which was adopted in this case: *Van Vronker* v. *Eastman*, 7 Metc. 157; *Green* v. *Westcott*, 13 Wis. 606; 2 Jones on Mort. secs. 1139, 1140.

But it is said that these only lay down the general rule where there is no interest in arrear when the mortgagee takes possession. This distinction, adverted to by complainant's counsel, is noticed by Mr. Jones in section 1140 of his work, as follows: "When there is interest in arrear at the time the mortgagee takes possession, annual rests are not generally required until the interest in arrear is paid off; and according to some authorities they are not, in such case, required until the whole mortgage debt has been paid off,"—thus

indicating, as we understand, that in the author's opinion the rule contended for by complainant is supported by the less weight of authority.

No satisfactory reason appears, to our minds, why, when there is a surplus of receipts in any year above all the interest then due, and disbursements, the balance remaining after discharging the interest should not be applied to reduce the principal; and this, irrespective of the fact whether there was, or was not, interest in arrear at the time the mortgagee took possession. We view the mode adopted by the master in making annual rests just and reasonable, and find no error therein.

A sale for taxes for one year after complainant took possession occurred, and complainant afterward redeemed from the tax sale. He was not allowed for the redemption money paid, but only for the amount of the tax. This is complained of. Complainant being in possession, and in receipt of the rents and profits, we think he should be allowed in account only the amount of the taxes with interest, and not the additional amount of the redemption money which was paid in order to redeem from a sale of the land for the taxes, which complainant had suffered to be made.

Appellees assign as a cross-error the finding of the court that there was no usury in the $6000 note and mortgage. Although, when the case was here before, we found the answer to be defective in setting up usury, we nevertheless fully considered the case upon the merits as to whether there was usury in the transaction, and found from the proofs that the note and mortgage were free from usury. Some additional evidence on the question was brought out on the last hearing, after the case was remanded back from this court. No additional witnesses appear to have been examined upon this subject, save one, on the part of the complainant. We do not find the case, as now presented upon the proofs, to be substantially variant from what it was before upon this

point, and we remain of our former opinion, and do not find any error in the decree of the circuit court in this regard.

A further cross-error assigned, is in allowing ten per cent interest on the money paid to redeem from the foreclosure sale under the Miles mortgage. We decided, when the case was here before, that this interest should be allowed, and we do not regard the propriety of that decision as now open for review.

In *Rising* v. *Carr*, 70 Ill. 597, a case which was before us a second time, where, after the cause was remanded, some additional testimony had been taken, on the strength of which it was sought to have changed the former decision in the case, we said in answer thereto: "We regard it as simply an effort to induce this court to reconsider its former judgment. We have neither the power nor inclination to permit that to be done in this way. It could only be done on petition for rehearing, in the manner prescribed by the rules of this court."

The decree of the Appellate Court will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE WALKER: I concur in the reversal, but not in all that is said in the opinion.