HERRICK STEVENS ET AL.

v.

MARY M. PAYNE ET AL.

*Mortgages—Mortgagee in Possession—Duty of—Waste.*

1. A mortgagee in possession is responsible for losses occasioned by his gross negligence or wilful default, but he will not be held accountable for anything more than the actual rents and profits received from property in the possession of tenants unless there has been such default or negligence on his part, and where neither such default nor negligence is proved, the mortgagee is to be held to have exercised the reasonable diligence required of him.

2. If offers were made in a given case, the rejection of which would create a liability to account for increased rent lost in the particular instances, such facts will afford no justification for charging more than the amount so lost, or for going back and making a general charge of rental values for a series of years.

3. A mortgagor residing near such property, with opportunity of knowing how the property was rented or managed, should take an interest in it, afford his aid and advice, and communicate any cause of dissatisfaction to the mortgagee.

[Opinion filed December 7, 1891.]

IN ERROR to the Circuit Court of La Salle County; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. W. S. COY, for plaintiffs in error.

Mr. GEORGE W. PATTON, for defendants in error.

CARTWRIGHT, J.    The question of usury in the various transactions between the parties to this cause, was determined by the Supreme Court in the case of Payne et al. v. Newcomb et al., 100 Ill. 611.    After the cause was remanded, a supplemental answer was filed by George W. Newcomb, Myron L. Pearce and Herrick Stevens, May 12, 1882, averring that after

the original decree dismissing the bill, the property described in the bill was sold February 12, 1880, under the power in a trust deed to Herrick Stevens, who went into possession, and asking an accounting under the mandate of the Supreme Court. The cause was referred to a master November 6, 1882, to state an account, and the master's report was filed February 23, 1883. Afterward the venue was changed from Livingston to La Salle County. The Circuit Court of La Salle County upon a hearing of exceptions to the master's report, having sustained some exceptions, and the parties having agreed that, in such case, the court might restate the account without again referring to a master, the court proceeded to restate the account on March 1, 1886, up to April 1, 1884, and then referred the cause to a master to state an account after April 1, 1884. The master took testimony and stated an account from April 1, 1884, to November 4, 1889.

On November 5, 1889, Mary M. Payne and Joseph Payne filed their supplemental bill, alleging that Stevens had been in possession of the property under the trustee's deed of February 12, 1880, from that date to March 5, 1887, and charging him with waste and a want of ordinary care and diligence in realizing the rental value of the property, and asking that he be charged for waste committed and rental values. On November 19, 1889, the court referred the cause back to the master to state an additional account for the rent of 1883. This being done by the master, the court overruled exceptions of plaintiffs in error and entered a final decree for redemption of the property upon payment of the balance due on the incumbrances, as shown by the report. The controversy now is concerning the account as restated by the court to April 1, 1884, and by the master since that time, and also for the rent of 1883. The court, in stating the account of the loans, credited Stevens with $1,900 as the actual loan on the $2,000 mortgage of July 22, 1867, and plaintiffs in error say that the $100 not allowed was paid Newcomb for services rendered Payne, and was not retained as a commission. Newcomb has so testified since the decision of the Supreme Court, but the question was settled finally by that decision. Moreover,

Stevens' answer to the bill stated that the $100 was paid New-comb as commission, and Newcomb made a statement in writing of the various loans in evidence before the master, in which he set down $1,900 as the amount paid Payne on that loan.

The court credited Stevens with $537.50 as the actual loan on the mortgage of August 3, 1872, for $1,000.

The balance of the amount for which this mortgage was given was made up of commissions and $275 interest credited on other usurious loans. But in stating the other loans, the court charged Stevens with payments upon them made by deductions from the $1,000 loan of August 3, 1872. This appears to be true to the extent of $200, at least.

After crediting Stevens with only the amount actually paid, which was right, he should not have been charged with any more than was actually paid to him. It is objected that the court charged Stevens with $288, paid October 5, 1870, of which it is said there is no evidence, and with $354.22, paid January 15, 1872, which it is said should be $315. Counsel for defendants in error says that the $288 was arrived at by taking account of a loan of May 12, 1868, which was secured on other land and had been paid off, on which Newcomb charged commissions to the amount of $75, and adding to that sum $13, paid by Payne for rent of the house, making $88, and adding a payment made October 5, 1870, by which process it was found that a payment of $288 could have been made, as charged by the court. Some similar process not fully disclosed produced the payment of $354.22.

The court charged Stevens with the $13 house rent in the account of rents, and it should not be counted in again to make up a payment, nor should the court go into a transaction fully completed and closed and take out of it payments of commissions voluntarily made, although usurious, and use them for payments on other loans. The direct evidence as to the payment of January 15, 1872, was that it was $315, and we find nothing in the record from which we can see that any indirect method of figuring would increase it, or be more satisfactory, nor has counsel aided us by any such computation. Where

Stevens v. Payne.

the court allowed a payment, the record must show that the court was right in doing so.

While Stevens was in possession, the property was not occupied by him, but was leased to tenants. The receipts of rent for 1880 amounted to $367.61; for 1881, $419.69; for 1882, $554.70, and for the subsequent years about $550 per annum. The court, in restating the account, disregarded the actual receipts and charged Stevens with $939 rent each year for the years 1880, 1881 and 1882; ordered the master, in stating rents for other years, to charge what might have been received by the exercise of ordinary care and diligence, if he should find that as much had not been realized as might have been with ordinary diligence. Under this order the master took testimony as to the character of the farm and its condition, the style of farming done by the tenants and the annual cash rental value of the farm, and in the report to November 4, 1889, stated that he had examined fifty-nine witnesses, and on the last reference he examined a considerable number of additional witnesses on the same subjects, as related to the year 1883. Most of the great mass of testimony so taken relates to cash rental values, and consists of opinions of witnesses on that subject.

The master reported that he found the testimony conflicting as to character and condition of the farm and husbandry of the tenants, and that all the testimony in the case preponderated in favor of a cash rental value of $3 an acre, thirty-seven witnesses placing it almost uniformly at that amount. The master therefore charged Stevens with $819 rent per annum for 1884, 1885 and 1886, and $909 for 1883.

This was approved by the court, and the final decree was based on these charges, with interest. The principle upon which this was done was that as mortgagee in possession, Stevens was bound to obtain the full cash rental value of the property, and upon failure to do so, must answer for the deficiency out of his estate. It would seem that no higher degree of diligence consistent with honesty could be exacted of one who rents premises to tenants. A mortgagee in possession is responsible for losses occasioned by his gross negligence

or wilful default, such as suffering a notoriously insolvent tenant to remain in possession, whereby rent is lost, or refusing a responsible tenant at a higher rent where the premises have not already been in good faith rented, whereby increased rents are lost, but he will not be held accountable for anything more than the actual rents and profits received from property in the possession of tenants, unless there has been wilful default or gross negligence on his part. Jones on Mortgages, Sec. 1123. Mr. Pomeroy says: "The general duty of the mortgagee in possession, toward the premises, is that of the ordinary, prudent owner. He must account in general for their rents and profits, or for their occupation value. When the land is in the occupation of tenants, he is chargeable with the *gross actual* rents and profits received, and with no more unless he has been guilty of a wilful default." "Some of the American cases make him chargeable, under these circumstances, with the amount of rent which he might, with reasonable diligence, have received; but this extensive liability, which is that of fiduciary persons, is not sustained by the weight of authority." Pomeroy's Equity Jurisprudence, Sec. 1216, and note 1. In the case of Moshier v. Norton, 100 Ill. 63, the mortgagee had been in possession, and the evidence showed the actual receipts of rent for the years 1878 and 1879, which were much less than the reasonable rental value of the lands, and the Circuit Court charged him with the reasonable rental value, which the Supreme Court held to be a departure from the correct rule requiring proof of wilful default or gross negligence. The court there quote approvingly from 3 Powell on Mortgages, 949, 1154, as follows: "A mortgagee will not be obliged to account according to the value of the lands, viz.: he will not be bound by any proof that the land was worth so much, unless it can likewise be proved that he actually made that sum of it, or might have done had he not been guilty of fraud or wilful default, as if he turned out a sufficient tenant, or refused to accept a sufficient tenant that would have given so much for it; for it is the *laches* of the mortgagor that he lets the lands lapse into the hands of the mortgagee by the non-payment of the money, and when it

doth, he is only a bailiff of what he doth actually receive, but is not bound to the trouble and pains of making the most of what is another's."

The cases clearly hold that there must be proof of wilful default or gross negligence on the part of a mortgagee in possession, in order to charge him with more than the rents actually received, and that where neither such default nor negligence is proved, the mortgagee is to be held to have exercised the reasonable diligence intended by the court in the use of that term in the cases where it is declared that the mortgagee must account for what could have been realized by reasonable diligence.

Another important rule laid down in that case affecting this one is, that the mortgagor residing near the property, with opportunity of knowing how the farm was rented and managed, should have taken an interest in it, afforded his aid and advice, and communicated any cause of dissatisfaction to the mortgagee. Stevens lived in Vermont and his agent resided in Chicago, distant from the property. During the first three years the land was mostly rented on shares, for one-third of the crop, which was the usual share of the landlord. The renting those years was managed by a sub-agent, living where the property was located, and afterward it was rented by the Chicago agent for cash. There is no evidence that the mortgagor ever took any interest in the renting or management, or ever communicated any suggestion of a better method to Stevens or his agent.

There is nothing to show negligence in the selection of the sub-agent, and he testified that he did the best he could in the renting. The actual receipts of the years when he managed the renting are shown, and subsequently, when the farm was not in as good condition, the Chicago agent realized a larger rental for cash than was received from a share of the crops. The farm was not in the best condition at first, and it afterward became worse, in respect to cockle burrs, while occupied by tenants, and this is the general experience under such conditions.

Yet it rented for no less than in the first years, but more

was realized from it. There was some evidence of offers of higher rent for the farm, or a portion of it, but there was also evidence that one party making an offer was not considered responsible, and that an offer so made was made late in the spring after the farm was rented. If offers were made, the rejection of which would create a liability to account for increased rent lost in the particular instances, such facts would afford no justification for charging more than the amount so lost, or for going back and making a general charge of rental values for a series of years. The court disregarded actual receipts, whether by a share of the crops or in cash, and charged Stevens with the full rental value of the premises, thereby requiring him at his peril to secure such rental value, or make up the deficiency.

The rental value fixed was based mainly upon the opinions of witnesses, varying from $2 to $3.50 per acre, showing, as is usual, a remarkable variance in matters of mere opinion. There was no sufficient evidence of wilful default or gross negligence either in the renting on shares or for cash to justify the making of such general charge, and it could only have been made upon the principle of a duty to realize the rental value. This does not appear to be the rule of liability, since it would require the mortgagee to insure the best results. The decree will be reversed and the cause remanded.

*Reversed and remanded.*