EMMA LOUISE HUBBARD *v.* HOWARD BROUMEL HUBBARD ET AL.

[No. 38, April Term, 1937.]

646

*Decided June 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, and SHEHAN, JJ.

*John T. Tucker,* with whom were *Keech, Carman, Tucker & Anderson* on the brief, for the appellant.

*William L. Marbury, Jr.,* and *Boyd B. Graham,* for Howard Broumel Hubbard and Mary Chantler Hubbard, appellees.

BOND, C. J., delivered the opinion of the Court.

A testamentary trustee for the benefit of a life tenant and remaindermen, holding an investment in notes secured by a pledge of mortgage bonds of the same debtor, applied to the court of equity for instructions on the distribution of money received as interest on the bonds after default on the notes at maturity, without sale or foreclosure of the collateral; and the life tenant appeals from a direction denying her a right to priority for payment of the interest installments on the notes after maturity.

The decedent, Howard Hubbard, devised and bequeathed all his estate to the Safe Deposit & Trust Company in trust to invest, to collect the income from time to time from investments made, and, after payment of charges and expenses, "to pay over the net income at stated periods to my wife, Emma Louise Hubbard, during her life, or widowhood, and from and after her death or remarriage, in trust to divide the corpus or principal of the trust estate as then constituted, into two equal parts or shares," for the testator's children, in remainder. In the year 1927, subsequent to the testator's death, the sum of $6,000 was invested by the trustee in notes of the Interborough Rapid Transit Company, of New York, part of an aggregate issue of $31,672,100, bearing interest at seven per cent., and maturing on September 1st, 1932, and which were secured as to principal and interest by a pledge with the Bankers Trust Company, of New York, as trustee, of mortgage bonds of the same company aggregating $54,989,000 in par value, bearing interest at five per cent. and maturing in 1966. By the terms of the indenture under which they were deposited, the bonds were to secure "the payment of the principal and interest of all said notes at any time issued and outstanding under this indenture, according to the tenor, purport and effect thereof, and secure the performance and observance of all the covenants and conditions" contained in the indenture. Until default on the notes or the interest on them, no interest was to be payable on the pledged

bonds. The trustee might sell the bonds upon default, or a specified percentage of noteholders might compel the sale, but none has been made. Upon a sale, the surplus proceeds, after payment of all costs, taxes, and advances made or liabilities incurred by the trustee, were, by the terms of the indenture, to be applied "to the payment of the whole amount then owing or unpaid upon the notes hereby secured for both principal and interest, with interest at the rate of seven per cent. per annum on principal after maturity and on overdue coupons, or in case such proceeds shall be insufficient to pay in full the whole amount so due and unpaid upon the notes, then to the payment of such principal and interest ratably, without preference or priority of principal over interest, or of interest over principal, or of any instalment of interest over any other instalment of interest." Receivers were appointed for the property of the Interborough Company on August 26th, 1932, and there was a default in payment of interest and principal on the notes at the maturity date, September 1st, 1932. Interest has been paid on the pledged bonds, beginning January 1st, 1933, under an order of the court of the receivership, and as the par value of the bonds greatly exceeds that of all the notes, the interest paid, although at a lower rate, exceeds the interest on the notes.

The chancellor below directed that, at the time of distribution of interest money from the pledged bonds, the trustee under the will should divide the amount received between income and corpus of the estate, that is, between the life tenant and the remaindermen, in the proportion that the amount of principal bears to that of the overdue interest on the notes. The conclusion that this should be done followed from viewing the payment of interest on the bonds as a realization upon the collateral, of the same nature as that upon a sale of it, with a resulting partial payment on the secured debt, insufficient to pay overdue principal and interest in full. And the rule of ratable distribution applied was one frequently found equitable upon such a realization and partial payment.

See studies and reviews of decisions in 84 Univ. of Pa. Law Review, 157, 327, and 625, and 49 Harvard Law Review, 805. A like conception of the payment on the pledge was adopted in the United States District Court for the Southern District of New York, under which the receivers have been acting, in giving directions for the application of the payments by the trustee under the pledge indenture. *American Brake Shoe & Foundry Co. v. Interborough Co.*, 11 Fed. Supp. 418. In 1935 that trustee, the Bankers Trust Company, asked the instructions, and the court directed that the distribution expressly provided in the indenture for proceeds of sale of the collateral when insufficient to pay the whole amount then due and payable on the notes should be followed as the solution of an analogous problem, and that therefore the notes and coupons should share equally and without priority in the distribution of collateral or of income or proceeds from it, but directed further that the interest being received from the bonds pledged as collateral should be applied first to post-maturity interest on the notes and coupons, and the remainder applied proportionately on the principal of the notes and coupons at their face value. The opinion of the court recited the fact that interest on the bonds was being paid, and instructions were sought for the allocation of that interest.

This court agrees with the chancellor below that the direction given by the federal court would not govern, and was not intended to govern, the distribution of the money received by a trustee noteholder between successive interests in the trust estate, those of life tenant and remaindermen. To some extent the problems would be governed by different principles; and the purpose of the testator manifested in his will would now be a factor in the solution. Nothing is found in the federal court's ruling, therefore, to relieve the Maryland courts of deciding questions raised by the trustee's application. And this court is of opinion that both the appropriate principals of law and the purpose of the testator require a solution different from that adopted by the chancellor as a result of his study.

The situation is that the trustee under the will, after default on the investment held for the present enjoyment of the life tenant and ultimate transfer to remaindermen. is receiving, not the proceeds of foreclosure and liquidation of the investment, insufficient for payment of principal and interest in final settlement, but profits from a security held intact, without foreclosure. Although the obligation for the payment of the interest constitutes part of the security for all obligations on the notes, it seems to this court that, so long as the security is intact, and no ultimate insufficiency for payment of the principal debt has been determined, the rule for proportionate allocation is not yet in order. "That principle is applicable where the security is realized and the capital loss ascertained. But there is no precedent for an inquiry as to prospective loss." Swinfen-Eady, J., in *Re Broadwood's Settlements* [1908] 1 Ch. 115, 120. Disregarding the division between life tenant and remaindermen, the rule of priority for payment of interest on the debt seems appropriate then. *Gwinn v. Whitaker's Admx.*, 1 H. & J. 754; *Frazier v. Hyland*, 1 H. & J. 98; *Frownfelter v. State*, 66 Md. 80, 89, 5 A. 410.

The case seems substantially that of a trustee who is a pledgee or mortgagee in possession after default, but without foreclosure, and who is receiving profits or rents from the security. These are applicable to the payment of the debt and interest, but, first, the interest. *Leggat v. Palmer*, 39 Mont. 302, 308, 102 P. 327; *State v. Nicely*, 171 Wash. 439, 18 P. (2nd) 503; *Woodson v. Woodson*, Wythe (Va.) 129; *Houton v. Holliday*, 6 N. C. 111. "A mortgagee in possession, whether in person, by trustee, receiver or by a tenant, is equally accountable for the rents and profits of the estate, but he is bound to apply them in reduction of the mortgage debt. After paying the interest on the debt, any balance is applicable to reduce the principal." 2 *Jones, Mortgages* (4th Ed.) sec. 1425. "Where a tenant for life and remaindermen are entitled to an outstanding mortgage debt and arrears of interest, and the security realizes less than sufficient to

pay the principal and interest in full, the sum realized by the security ought to be apportioned between the tenant for life and the remaindermen in the proportion which the amount due in arrears of interest bears to the amount due in respect to capital. If the security is not realized the rents are applicable first in discharge of arrears of interest due the estate, next in payment to the tenant for life of sums not exceeding the mortgage interest, and lastly the capital." *Coote, Law of Mortgages* (8th Ed.) 545; *Re Broadwood's Settlements*, [1908] 1 Ch. 115, 122; *Re Coaks*, [1911] 1 Ch. 171; *Raphael v. Boehm*, 11 Ves. 92, 103; *Reed v. Reed*, 10 Pick. (Mass.) 398, 401; *Elmer v. Loper*, 25 N. J. Eq. 475, 482; *Moshier v. Norton*, 100 Ill. 63, 74; *Gladding v. Warner*, 36 Vt. 54, 57; 3 *Tiffany, Real Property*, 2440; and see *Barron v. Whiteside*, 89 Md. 448, 462, 43 A. 825.

And pledged though the bonds are, interest as well as principal, as security for both principal and interest of the notes, the arrangement under which the payments are being made is exactly that to which the successive enjoyment of life tenant and remaindermen planned by the testator is appropriate, and for which it was intended, that is, an arrangement by which periodic returns are received from an investment, the corpus of which is as yet unimpaired. It may be that upon complete liquidation of the investment a loss of corpus will be ascertained; but that cannot even be conjectured now, and it would be at odds with the testator's purpose that the life tenant should be deprived of part of her bequest, essentially one for present enjoyment, upon the mere possibility that a loss may be sustained by the corpus on a subsequent foreclosure. So far as can be seen from anything before the court, it is equally possible that there will be no loss, and in that case the widow may have been deprived of her enjoyment, to an extent, only to make an addition to the corpus and the estates of her children. See *Whitridge v. Williams*, 71 Md. 105, 17 A. 938; *Matter of Hoyt*, 160 N. Y. 607, 55 N. E. 282.

The excess received above the amounts of interest on

the notes can only be applied to reduction of the principal debt on them, and this must have the consequence of reducing the basis of the income allowance to the life tenant, and therefore, the allowance itself. The consistency of this with the testator's design might, perhaps, be questioned, but it is the rule of the authorities cited. The life tenant is held entitled to payments of the income secured to her in the investment, or seven per cent. interest on the notes, and interest at the same rate on any deferred payments, before application of any of the amounts received to the reduction of principal. The allowance of interest on deferred payments of interest we understand to be uncontested.

The court would be understood as passing without consideration any question of allocation of money which may be received after sale or foreclosure of the collateral.

*Decree reversed, and cause remanded for the passage of a decree in accordance with this opinion; costs to be paid from the principal of the trust estate.*