SAFE DEPOSIT & TRUST CO. OF BALTIMORE *v.*
ELIZABETH W. WOODBRIDGE ET AL.

[No. 31, January Term, 1945.]

*Decided April 12, 1945.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*George M. White,* with whom were *White & Page* on the brief, for the appellant.

*J. Crossan Cooper, Jr.,* and *Hunter H. Moss,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

Elizabeth W. Wilson of Baltimore City, on April 28, 1924, executed a deed of trust of certain securities to the Safe Deposit & Trust Company of Baltimore, which was amended by a later deed executed June 10, 1927. By the terms of this trust she reserved to herself during her life the net income therefrom and such part or parts of the principal as she might from time to time demand, and directed the trustee after her death to pay the net income therefrom to her adopted daughter, Elizabeth W. Woodbridge, during her life and thereafter to certain persons named therein. Elizabeth W. Wilson died March 26, 1940, testate, never having made any demand for any part of the principal of the trust estate. The Safe Deposit & Trust Company of Baltimore was named executor and duly qualified.

In 1924 and 1925 the trustee purchased as an investment for the trust an aggregate of $4,000 par value Florida, Central & Peninsular Railroad First Consolidated Mortgage 5% Bonds due January 1, 1943. Seaboard Air Line Railway Company is successor by merger and consolidation to Florida, Central & Peninsular Railroad Company and in 1915 assumed all the obligations of the obligor with respect to the bonds, interest thereon, and the mortgage securing them. On December 23, 1930, receivers were appointed by the United States District Court for said Seaboard Air Line Railway Company. The receivers operated and still operate the properties securing said bonds as well as all the other properties of Seaboard Air Line Railway system. The interest on the bonds to maturity is represented by negotiable coupons in bearer form. The interest coupons due previous to July 1, 1935, were paid by August 15, 1941.

On March 2, 1942, the trustee under the mortgage securing the bonds filed foreclosure proceedings. On the same day the court appointed its aforesaid receivers as receivers in the foreclosure proceedings and consolidated the foreclosure proceedings with the original receivership. The court further found that the trustee

under said mortgage was entitled to the income from the property covered thereby, but inasmuch as all the lines of the railroad operated by the receivers were operated as a unit or system, the court found it impossible for the receivers to determine and allocate the income from the property subject to such mortgage until a proper basis of allocation had been agreed upon or established by the court. No such allocation has been agreed upon or established by the court, and no decree of foreclosure or sale pursuant thereto has been had in the foreclosure proceedings.

By order of court entered June 16, 1942, the receivers paid to the trustee on July 1, 1942, the interest coupon maturing on that date, and the trustee paid this distribution to Elizabeth W. Woodbridge, the payment having occurred after the death of Elizabeth W. Wilson.

On October 30, 1944, the Reorganization Committee of Seaboard Air Line Railway Company applied to the court for authority and direction to the receivers to pay on December 1, 1944, eight semi-annual instalments. Pursuant to that petition, the court ordered the receivers to pay eight semi-annual instalments of interest for the period July 1, 1939, to January 1, 1944 (exclusive of the coupon due July 1, 1942, which had been paid as heretofore set out) at the rate of five per cent. (5%) per annum, except that the last two instalments for the year 1943 (the bonds matured January 1, 1943) should be made at the rate of six per cent. (6%) per annum. It is agreed by the parties to the case at bar that the reason why said Reorganization Committee applied for, and the court ordered the payment of the instalments of interest for the period July 1, 1939, to January 1, 1944, and the payment of the July 1, 1942 coupons, was the tax and accounting advantages to the receivership estate resulting therefrom.

The receivers have therefore paid all instalments of interest on the bonds for the period from July 1, 1929, to January 1, 1944, upon the surrender and cancellation of the coupons, except that no payment of the nine semi-

annual interest instalments or the coupons representing the payments due for the period January 1, 1935, to July 1, 1939, have been paid. All of the interest so paid by the receivers was paid out of earnings from the property securing the bonds. The Seaboard Air Line Railway Company in no instance made objections to any of such applications or to the interest payments proposed thereby. None of the parties to the case at bar were parties to said receivership proceedings. All of the outstanding bonds and the mortgage securing the bonds were executed and delivered in the State of New York. The place of payment of principal and interest is specified as the City of New York.

The Safe Deposit & Trust Company of Baltimore, trustee, has distributed to Elizabeth W. Wilson or her estate all of the aforesaid instalments of interest received by said trustee except that (a) the said trustee distributed to said Elizabeth W. Woodbridge the July 1, 1942 instalment paid on that date as above set forth, and (b) the said trustee has made no distribution of the eight semi-annual instalments of interest paid December 1, 1944, designated by the receivers under order of court as interest payments due for the period from July 1, 1939 to January 1, 1944.

The Safe Deposit & Trust Company of Baltimore as trustee, being unable to determine to whom the payments designated by the receivers for the period July 1, 1939, to January 1, 1944, should be paid under the trust aforesaid, submitted this case as a special case stated in Circuit Court No. 2 of Baltimore City. The Chancellor there decreed that the Safe Deposit & Trust Company of Baltimore, as executor of the estate of Elizabeth W. Wilson, should receive that part of such interest paid for the period from July 1, 1939 to March 26, 1940, when Elizabeth W. Wilson died, and the said Elizabeth W. Woodbridge should receive that part of such interest paid for the period from March 26, 1940, to January 1, 1944. From that decree the appellant appeals.

As according to the stipulation filed the receivers on March 21, 1940, found that the cash situation did not

justify payment before January 1, 1941, of more than one instalment then paid against the July 1, 1934, coupons, it is evident that the payments in dispute represented earnings after March 21, 1940.

Under the plan for reorganization of the Seaboard Air Line Railway Company, it is admitted by the parties in the case at bar that there is every indication that all income and principal obligations on the bonds will be ultimately satisfied.

The appellant, however, contends that the nine payments received by the trustee from the receivers, designated as payment of interest for the period July 1, 1939 to January 1, 1944, should be applied by the trustee to satisfy the defaulted coupons due for the period January 1, 1935 to July 1, 1939, the result being that all of the payments in dispute would be paid to the appellant as Elizabeth W. Wilson did not die until March 26, 1940.

The intention of the settlor of the trust should, of course, control. *Handy v. McKim*, 64 Md. 560, 568, 569, 4 A. 125; *Rogers v. Sisters of Charity*, 97 Md. 550, 553, 55 A. 318. In the instrument creating this trust the words are plain and simple. The settlor simply directed the payment of the income to herself for life and after her death to Elizabeth W. Woodbridge during her life and thereafter to certain other persons. If the payment of the nine instalments of interest in dispute was payment of interest or coupons due during the lifetime of Elizabeth W. Wilson, it should, of course, be now distributed by the trustee to the appellant as executor of her estate. If, on the other hand, it was payment of interest or coupons due after her death, it should, of course, be distributed to the parties entitled to that income after her death.

It is said in *Restatement, Conflict of Laws*, Section 368, "Application of Payments": "The law of the place of performance governs the application of a payment to one or another of several debts payable there by the person making the payment to the person receiving it." See also Section 358. *Fear v. Bartlett*, 81 Md. 435, 446, 32 A. 322,

33 L. R. A. 721. The law of the State of New York would therefore govern the application of the payments in the case at bar.

It is a well-settled principle of both civil and common law, universally applied, that a debtor of more than one debt to a creditor of a debt composed of several items, has the right to direct to which debt or debts or to which item of a single debt and in what amounts a payment made by him shall be applied. *Baker v. Stackpole,* N. Y., 9 Cow. 420, 18 Am. Dec. 508; 40 *American Jurisprudence,* p. 792, Section 110. It was said by this Court in the case of *Neidig v. Whiteford,* 29 Md. 178, at page 185: "The question, therefore, resolves itself into one of application of payments. And in reference to the principle governing such a case as this, the law is clear. The general rule is, that the debtor has the right, if he so elects, to make the application of payments in the first instance, and if he omits so to do, the creditor may make the appropriation; but if neither make any appropriation, the law appropriates the payment to the earliest and, generally, the most onerous debt. *Mills v. Fowkes,* 5 Bing. N. C., 455; *Gwinn v. Whitaker's Adm'x,* 1 Har. & J. 754; *Dorsey v. Gassaway,* 2 Har. & J. 402 [3 Am. Dec. 557]." *Frazier v. Hyland,* 1 Har. & J. 98; *Calvert v. Carter,* 18 Md. 73; *Trustees of G. L. E. St. M. Congregation v. Heise,* 44 Md. 453; *Harris v. Hooper,* 50 Md. 537, 550; *Dickey v. Permanent Land Co.,* 63 Md. 170; *Maryland Jockey Club v. State,* 107 Md. 262, 265, 68 A. 613; *Legum v. Farmers Nat. Bank,* 180 Md. 356, 361, 24 A. 2d 281. The appellant in his brief states: "Where a debtor himself has made an unallocated payment to a creditor to whom he owes several debts and the matter subsequently comes before the court, the rule adopted in Maryland would require the court to make the application to that debt in the discharge of which the debtor would fare best."

Therefore, under the law, if the Florida, Central & Peninsular Railroad Company itself had paid these nine instalments of interest to the trustee of the estate of

Elizabeth W. Wilson and had designated that the payments should be applied to the interest due for the period from July 1, 1939 to January 1, 1944, under the principle above stated and universally applied, it would undoubtedly have been the duty of the trustee upon surrender of the interest coupons for that period to credit the debtor with the payment of that interest and to distribute it to the party or parties entitled to the income during the period specifically designated.

The question then arises as to what effect the fact that receivers have been appointed for the debtor, and have made the application of payments on the receivers' recommendation and order of court, in a manner and for a period which it is admitted is an advantage to the debtor for the reason that it saves taxes, and without foreclosure or sale of the property and the security not realized, has on the principle of law above stated and universally applied.

Appellant relies strongly on the case of *Hubbard v. Hubbard,* 172 Md. 645, 192 A. 592. In that case a testamentary trustee for the benefit of a life tenant and remaindermen held an investment in notes of Interborough Rapid Transit Company of New York, which notes were secured as to principal and interest by a pledge with the Bankers' Trust Company of New York as trustee of certain bonds of the Interborough Rapid Transit Company aforesaid. The bonds were to secure the payment of the principal and interest on said notes. Until default occurred on the notes or the interest on them, no interest was to be payable on the pledged bonds. The trustee could sell the bonds upon default. Upon such a sale, the proceeds were to be applied to the payment upon the notes secured for both principal and interest. Receivers were appointed for the property by the Interborough Rapid Transit Company, and there was a default in the payment of interest and principal on the notes. Interest had been paid on the pledged bonds under an order of court of the receivership. The bonds were not sold, but the interest paid on them exceeded the interest on the notes.

The Bankers' Trust Company as pledgee asked the United States District Court for instructions as to proper distribution of the money paid on the bonds held as collateral. That court directed that the distribution expressly provided in the indenture for the proceeds of sale of the collateral, when insufficient to pay the whole amount then due on the notes, should be followed and that the notes and coupons should share equally and without priority in the distribution of collateral or of income or proceeds from it. This court held that as the trustee was receiving profits or rent from the security, and that as there had been no foreclosure of the property and the security not realized and the security was intact and no ultimate insufficiency for payment of the principal debt had been determined, the Maryland trustee should apply the amount paid to the payment of interest and not to principal.

In that case the order of the United States District Court according to the finding of the Chancellor below as revealed by the record, was simply a ruling for the determination of the indebtedness of the Transit Company to its creditor, the Bankers' Trust Company, and only involved a bookkeeping arrangement between the debtor and the pledgee. A study of the instructions to the collateral trust indenture trustee by the United States District Court in the case of *American Brake Shoe & Foundry Company v. Interborough Rapid Transit Co.* S. D. N. Y. 1935, 11 F. Supp. 418, reveals this. The order in no way governed or intended to govern the payment to the note holders or the rights of the owners of successive interests in the notes, or whether the payments were to be applied to income in preference to principal, as between life tenants and remaindermen. On that phase of the case this Court said at page 649 of 172 Md., page 594 of 192 A.: "This court agrees with the chancellor below that the direction given by the federal court would not govern, and was not intended to govern, the distribution of the money received by a trustee noteholder between successive interests in the trust estate, those of life tenant and remaindermen."

In the case at bar there are no pledged bonds, and the receivers paid directly to the trustee as a bondholder, not through a pledgee, certain definite interest for a definite period upon surrender of coupons for that particular period. The case of *Hubbard v. Hubbard, supra,* is therefore not controlling here. The quotation in that case at pages 650 and 651 of 172 Md., page 594 of 192 A. from *Coote, Law of Mortgages,* 8th Ed., is not applicable here for the reason that here there has been a specific application of the payments for the debtor. Further, it was said in the case of *Hubbard v. Hubbard,* supra, at page 651 of 172 Md., page 595 of 192 A.: "It may be that upon complete liquidation of the investment a loss of corpus will be ascertained; but that cannot even be conjectured now, and it would be at odds with the testator's purpose that the life tenant should be deprived of part of her bequest, essentially one for present enjoyment, upon the mere possibility that a loss may be sustained by the corpus on a subsequent foreclosure. So far as can be seen from anything before the court, it is equally possible that there will be no loss, and in that case the widow may have been deprived of her enjoyment, to an extent, only to make an addition to the corpus and the estates of her children. See *Whitridge v. Williams,* 71 Md. 105, 17 A. 938, 17 Am. St. Rep. 513; *Matter of Hoyt,* 160 N. Y. 607, 55 N. E. 282, 48 L. R. A. 126."

It is pointed out in 40 *American Jurisprudence,* at page 791, Section 109: "The right of a debtor to make an application of a payment, or, in the event of his failure to do so, the right of a creditor to make such an application, may be exercised only in cases of voluntary payment." As to payments *in invitum* or by judicial proceedings, it is said in the same volume at page 811, Section 139: "In cases of payment *in invitum,* or by judicial proceedings, the creditor does not become the owner of the money until it is paid, and the law at the very time of the payment makes its own application, and the creditor has no opportunity to make it himself." These views are sustained by the case of *Orleans County Na-*

*tional Bank v. Moore,* 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775. In the case at bar there was a definite application of the payment by the law at the time of payment.

The receiver is an officer of the court, and the property entrusted to his care is regarded as being in *custodia legis* to await ultimate disposal by the court according to the rights and priorities of the parties concerned. *Williams v. Messick,* 177 Md. 605, 610, 11 A. 2d 472, 129 A. L. R. 1035.

In the instant case it is admitted, as above set forth, that the reason the interest was paid for the particular period specified was for the purpose of saving taxes. This was not only an advantage to the debtor corporation, but to all holders of the bonds who are the creditors and who, of course, desire to collect the principal and interest of the bonds in full. The United States District Court in its order providing for the payment of interest specifically found that such a payment was to the interest of the receivership estate. If the payment was to the interest of the receivership estate, it was not only to the best interest of the debtor corporation, but also to the best interest of its creditors. The Maryland trustee in this case acts and holds not only for the life tenants, but also for all the remaindermen. The trustee could not have obtained the payment in dispute without a surrender of the coupons for the interest periods specified and interest for that particular period cannot again be collected.

The interest coupons in this case are negotiable. If the trustee had distributed the coupons to the parties entitled to them instead of paying the interest, and these parties had negotiated them to different banks, one bank certainly could not compel the other bank to turn over the money it had received, nor could it compel the receivers to pay in any way other than that ordered by the receivers' court.

Although the payment applied by the receivers is not the earliest debt of the debtor, under the stipulation it is the most onerous and would have been so applied by the

debtor because it is the one most advantageous to the debtor. *Gwinn v. Whitaker's Adm'x, supra; Neidig v. Whiteford, supra.* It is stated in 40 *American Jurisprudence,* page 795, Section 116: "It is firmly established that an application of a payment made by direction of the debtor cannot be changed or revoked except with the consent of both the creditor and the debtor." *Page v. Lloyd,* 5 Pet. 304, 30 U. S. 304.

Although this court might not be compelled to accept the distribution made by the receivers, under the authorities, hereinbefore given, we see no reason to disregard that distribution. We are therefore of the opinion that the payment made by the receivers, who held to await disposal by the court according to the rights and priorities of the parties concerned acting under order of the United States District Court, of interest for a specific period was, under the admitted facts in this case, primarily a designated payment by the debtor and as such was correctly applied by the Chancellor and the decree should be affirmed.

*Decree affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion:

I regret that I am unable to concur in the conclusion of the court in this case, or the reasoning upon which it is based. Because of the novelty and importance of the question, I deem it proper to state the grounds of my dissent.

The rules as to the binding effect of applications of voluntary payments are not controlling here. All of the authorities agree that distributions made in the course of judicial proceedings must be governed by equitable principles and cannot be controlled by the acts of the parties, debtor or creditor. 6 *Williston, Contracts,* Rev. Ed., Sec. 1794 et seq. (particularly p. 5104, n. 1, p. 5112, n. 11); *Page, Contracts,* 2d Ed., Sec. 2847; *Citizens & Southern Bank v. Armstrong,* 1918, 22 Ga. App. 138, 95 S. E. 729; *Wetmore & Morse Granite Co. v. Ryle,* 1919, 93 Vt. 245, 107 A. 109; *Ohio Electric v. Le Sage,* 1926,

198 Cal. 705, 247 P. 190; *Madison National Bank v. Weber,* 1927, 117 Ohio St. 290, 158 N. E. 543, 60 A. L. R. 199; *In re Cunningham's Estate,* 1924, 311 Ill. 311, 142 N. E. 740 (payment by an administrator); *Munger, Application of Payments* (1879), p. 31; *Restatement, Contracts,* Sec. 393. In each of the cases cited the distribution by the court was *pro rata.* This is not the invariable rule, but in each case the application must produce a just result. *Carson v. Federal Reserve Bank,* 1930, 254 N. Y. 218, 172 N. E. 475.

The fundamental question in the case at bar is whether the application made by the Federal Court is legally binding in this proceeding. The appellee concedes that the order of that Court is not *res adjudicata,* and the opinion in the case at bar appears to concede as much. The case of *Hubbard v. Hubbard,* 172 Md. 645, 192 A. 592, is directly in point. There the Federal Court applied a fund representing income from pledged securities *pro rata,* as between the principal and interest of outstanding notes. This Court held that it should be applied wholly to overdue interest, where the security has not been realized and there is no showing that it is impaired. The case has no bearing upon the question as to the relative rights of overdue interest claimants.

No particular significance can be ascribed to the fact that the interest claims were evidenced by coupons which had not in fact been negotiated. Interest accrues from day to day and is apportionable. 2 *Scott, Trusts* Sec. 235; *Owens v. Graetzel,* 146 Md. 361, 126 A. 224, 39 A. L. R. 943. In the case at bar the interest represented by one coupon was apportioned by the Chancellor as of the date of death of the first life tenant. The trustee, having in hand certain payments upon surrender of designated coupons, has asked instructions from the State Equity Court as to the proper distribution of the fund, as between successive life tenants of the trust estate. See Code, Art. 16, Sec. 223. The trust instrument sheds no light upon the question, for the contingency whereby default occurred in the lifetime of the

first beneficiary, and continued for a considerable period after the second life tenant became entitled to interest, was obviously unforeseen. In this situation it would seem that the principle that equality is equity ought not to be disregarded except for positive and compelling reasons. As a result of the decision in the case at bar one beneficiary, having a claim for overdue interest, is preferred, in point of time and present enjoyment, over another beneficiary, having a claim for overdue interest of earlier maturity and at least equal standing that has passed to her executors. The fact that there may be no ultimate loss is beside the point; the question is one of present enjoyment.

There appears to be little authority dealing with the precise question presented here, although there are many cases dealing with the question of distribution as between principal and interest, after default but before foreclosure, or in the course of salvage operations. In New York a statute was passed in 1940, ch. 452, adding *Personal Property Law*, Sec. 17-c, *Consol. Laws* C-41, dealing with that problem. See *In re West's Estate*, 289 N. Y. 423, 46 N. E. 2d 501, 149 A. L. R. 1365, affirmed *Demorest v. City Bank Farmers Trust Co.*, 321 U. S. 36, 64 S. Ct. 384, 88 L. Ed. 526. See also the *Maryland Statute*, Code, Art. 75B, adopting the *Uniform Principal and Income Act.*

Perhaps the closest case upon the question as to distribution as between successive life tenants, after default but before foreclosure, is the English case of *Broadwood's Settlements*, 1 Ch. (1908) 115 (cited in *Hubbard v. Hubbard*, supra.) That case is stated in 4 *Bogert, Trusts and Trustees*, 1935 Ed., Sec. 819, n. 7, as follows: "Interest on mortgage fell behind during tenancies of several successive cestuis; payments later made should be apportioned to them in proportion to the amount of back interest due each." Swinfer-Eady, J., said (P. 122) : "Until foreclosure absolute, I am of the opinion that the income must be distributed rateably between the persons entitled to the income, and the proper method will be to take the date when each sum is or was received

or recovered and to apportion that sum in proportion to the amounts owing to the respective estates for arrears of interest at that date. That is to say, each sum received or recovered is to be treated as a payment on account of all arrears claimable by the representatives of the first and second life tenants and the remainderman, and is to be apportioned rateably between them in accordance with the arrears owing to them respectively." See also 29 *Halsbury's Laws of England,* 2d Ed., Sec. 949; *Re Southwell* (1915) 85 L. J. (Ch.) 70; and *Skilton* "Rights of Successive Beneficiaries in Unproductive Trust Assets Bearing Interest," 15 Temp. U. L. R. 378, 396.

The appellee argues that special equities in the case at bar require that the actual payments made be honored for apportionment purposes. The Federal Court applied boom year earnings to interest accruing during that period, pursuant to a plan of tax avoidance. It is contended that from a realistic point of view the bonds bearing fixed interest were converted into income securities, on the date of the receivership of the Seaboard System. No authority is cited for this proposition. The case of *Heyn v. Fidelity Trust Co.,* 174 Md. 639, 197 A. 292, 1 A. 2d 83, 739, dealt with a dividend, and the case of *Re: Taylor's Trusts,* 1 Ch. (1905) 734, dealt with income bonds. Both cases turn on the point that there was no obligation to pay interest except as and when earned. The Supreme Court has indicated that the right to accrued bond interest cannot be subordinated to the exigencies of corporate reorganization. *Consolidated Rock Products v. DuBois,* 312 U. S. 510, 61 S. Ct. 675, 85 L. Ed. 982; *Otis & Co. v. Securities and Exchange Comm.,* 323 U. S. 624, 65 S. Ct. 483.

It is not necessary in the case at bar to challenge the right of the Federal Court to order payment of designated coupons; that designation should be disregarded by the Chancellor in order to reach a fair and equitable result between claimants of the same class, who were not parties in the receivership proceeding. I think the fund in hand should have been apportioned.